A. P. McGLYNN, Petitioner, *v.* COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 4714. Decided September 24, 1926.

Upon the evidence, *held*, that petitioner is entitled to a deduction of debts determined to be worthless and charged off within the year 1923.

*Benjamin H. Flesher, Esq.*, for the petitioner.
*W. H. Lawder, Esq.*, for the respondent.

This is a proceeding to set aside a deficiency of $202.34 for the calendar year 1923. Petitioner claims that he sustained a loss of his investment of $10,540 in the stock of a corporation, and that $5,000 of various loans made by him from time to time to a corporation was determined to be worthless and charged off within the year. The Commissioner refused to allow any deduction in respect of the investment or loans.

### FINDINGS OF FACT.

The petitioner is a resident and citizen of Minneapolis, Minn. Early in 1921 he organized a corporation known as the Oxford Amusement Co., for the purpose of erecting, equipping, and operating a moving-picture theatre in St. Paul. He acquired the capital stock of the corporation, for which he paid $10,540. The cost of constructing and equipping the theatre greatly exceeded the original estimates and petitioner from time to time advanced various sums of money to the corporation and paid certain of its indebtedness for materials and labor in amounts ranging from $12 to $2,800, amounting in all to a total in excess of $17,000, for which the corporation executed its promissory notes to him.

The theatre was opened on November 30, 1921, and was operated continuously thereafter until June, 1922, at a loss of approximately $400 a month. The corporation became insolvent in June, 1922. It

was indebted in large sums to various persons for materials and labor. The Vellaume Box and Lumber Co. held first and second mortgages on the property. When the first interest installment provided in these mortgages became due, in June, 1922, the corporation was unable to pay it. As a result, certain individuals connected with the Vellaume Box and Lumber Co., to whom this petitioner was well known, proposed to the corporation that they would form a new corporation to assume its liabilities, other than its stock liabilities to petitioner, and its liabilities on various notes payable to him, amounting to approximately $17,000, in exchange for its assets. This proposition was accepted and the transaction was consummated in June, 1922. A new corporation was immediately organized to take over and operate the theatre. The petitioner received no stock in the new corporation. Thereafter, the Oxford Amusement Co. remained in existence but carried on no business and possessed no assets.

At the time of this transaction, certain of the individuals connected with it verbally stated to the petitioner that if the new corporation should be successful in the operation of the theatre, they would make an effort to see that he should be at least partially reimbursed for his loans to the amusement company. Later in 1922, the prospects of the new corporation for success were not bright and one of the individuals who had participated in the acquisition by the new corporation of the assets informed the petitioner that nothing would be paid to him in reimbursement. Two of the other men interested in the transaction, however, stated to petitioner in 1922 and 1923 that they still had hopes that he might some time be reimbursed to the extent of possibly 35 or 45 per cent of his loans to the old corporation. These statements were not binding, either upon the new corporation or the individuals, but represented merely an expression on the part of the petitioner's friends of their desire that he should not completely lose the amounts which he had advanced to the old corporation. In 1923, the petitioner, after conferring with his counsel, and with those interested in the new corporation, concluded that at least $5,000 of the loans, totaling approximately $17,000, was worthless and charged that amount off on his books and deducted the same from gross income for 1923.

### OPINION.

LITTLETON: Counsel for the petitioner contended at the hearing that in addition to the $5,000 claimed as a deduction by the petitioner in his 1923 income-tax return, he should be allowed a deduction of $10,540 as a loss sustained in 1923 on his investment in the stock of the Oxford Amusement Co. We believe, however, from the evidence,

that the loss of the investment in the stock was sustained in June, 1922, when the corporation became insolvent and disposed of all of its assets in consideration of the assumption of its liabilities. The evidence shows with respect to the notes of that corporation held by the petitioner, that while this indebtedness was not assumed by the purchasers of the assets, the petitioner entertained hopes, based upon their personal representations that they would endeavor to see that he should at least be partially reimbursed therefor in the event of the successful operation of the theatre by the new corporation.

In 1923, after making inquiry concerning the matter, he ascertained that there was little probability that the total indebtedness of the old corporation to him would be repaid, and charged off $5,000 of the several outstanding notes. Whether the amount charged off represented the total of certain of the notes, or the entire amount of some and a portion of others, is not definitely disclosed by the record. However, the Revenue Act of 1921 permitted a debt to be charged off in part.

We are satisfied from the evidence that petitioner was justified in charging off as worthless in 1923 the amount of $5,000 and that amount is allowed as a deduction from gross income for that year.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*